# In the United States Court of Federal Claims

|   |   |
|---|---|
| BWHIT INFRASTRUCTURE SOLUTIONS, LLC, | |
| *Plaintiff,* | No. 23-813C |
| v. | (Filed: October 31, 2023)[1] |
| THE UNITED STATES, | |
| *Defendant.* | |

*Alan Mark Grayson*, Alan Grayson, Esq., Orlando, FL, for Plaintiff.

*Antonia Ramos Soares*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

Plaintiff, BWhit Infrastructure Solutions, LLC ("BWhit"), protests the U.S. Department of Veterans Affairs' ("VA") decision to terminate its contract award for signage, cancel the Invitation for Bids ("IFB"), and issue a new IFB with updated requirements. Compl., ECF No. 1. BWhit argues that the VA's decision violates the Federal Acquisition Regulations ("FAR") and is arbitrary and contrary to law. *Id.*

Before this Court are the parties' cross-motions for judgment on the administrative record and the Government's Motion to Strike. Pl.'s Mot. for J. on the Admin. R. ("Pl.'s Mot."), ECF No. 13; Def.'s Resp. and Cross-Mot. for J. on the Admin. R. ("Def.'s Mot."), ECF No. 20; Def.'s Reply in Support of Its Cross-Mot. for J. on the Admin. R. and Its Mot. to Strike ("Def.'s Reply"), ECF No. 30.

---

[1] This Opinion was filed on October 12, 2023, and the parties were afforded fourteen days to propose redactions. Plaintiff requested redaction of its signage manufacturer's identity. Mot. for Redaction, ECF No. 39. The Court granted the Motion. ECF No. 40. Accordingly, the Court reissues this Opinion with the name of Plaintiff's signage manufacturer redacted, which is noted with bracketed asterisks.

For the reasons set forth below, Defendant's Motion to Strike is **GRANTED**. Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**. Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED**.

I.      **Factual Findings**

   A.      **The Invitation for Bids and Contract Award**

On December 12, 2022, the VA issued an IFB to update wayfinding signage at the Edward Hines, Jr. VA Hospital. AR 76. The agency instructed contractors to prepare four different bids: a "base bid" for eight buildings, and alternate bids for six, five, and three buildings. AR 78–79. The VA planned to award a single contract based on the "base bid." AR 79. If the "base bid" exceeded the funds, the VA would make a single award based on the alternate bids. *Id.* Before soliciting bids, the agency estimated that the base bid could cost $6.4 million, and the IFB noted that the contract would likely be worth $5-10 million. AR 74, 76.

According to the VA's competition rules, the "responsible bidder who submitted the lowest responsive bid" would win the contract. AR 79. After the competition, the VA intended to reveal each bidder's proposed price. AR 945. The IFB required bidders to "[p]rovide equal to interior and exterior signage products by one of the following manufacturers: . . . a. ASI Signage, b. 2/90 Sign Systems, c. A.R.K Ramos, d. ACE Sign Systems, Inc., e. Diskey Architectural Signage Inc.[,] f. NDS Signage and Branding." AR 490. The IFB also required bidders to submit a bid bond, and bids submitted without the required bond guarantee were deemed unresponsive and rejected. AR 80.

The bidding period opened on January 11, 2023. AR 1004. Five companies submitted bids, and BWhit's was the lowest. AR 1004–05. BWhit submitted a "base bid" of $2.9 million for the eight buildings project. *Id.* Blue Yonder, Inc. ("Blue Yonder") submitted the second lowest bid, at approximately $4.1 million. *Id.* After evaluating the proposals, the VA found that BWhit's proposal met the contract requirements. AR 1006. On March 8, 2023, it awarded BWhit the contract to perform the full eight building signage replacement. AR 1012.

   B.      **Losing Bidder Protests and the VA Takes Corrective Action**

On March 13, 2023, Blue Yonder filed a protest with the Government Accountability Office ("GAO"). AR 1083. Blue Yonder claimed that BWhit "[could not] provide the required signage for the project from one of the approved sources[,]" and thus its bid should have been rejected. AR 1087–88. In its view, the IFB "required bidders to provide interior and exterior signage products from one of the [six listed] manufacturers[.]" AR 1087. Blue Yonder asserted that the sign manufacturer identified in BWhit's bid—[***]—could not comply with the IFB rail system specifications and that BWhit was precluded from working with the other five manufacturers. AR 1088. On March 14, 2023, the VA notified BWhit of the protest and suspended performance to allow the protest to proceed. AR 1106.

Blue Yonder's protest revealed confusion about whether the bidders were limited to using the six listed sign manufacturers. AR 1415. On March 28, 2023, the VA contacted Guidon Design ("Guidon") to discuss Blue Yonder's bid protest and how to remedy the misimpression

conveyed by the IFB. *Id*. Guidon prepared the designs and bid packages for the two VA projects at issue in this protest: fiscal years 2023 and 2024 signage requirements. *See* AR 1411–15. The VA directed Guidon to "remove ambiguity . . . in the contract documents," "check with manufacturers prior to updating . . . Section (10 14 00)," and "give salient features of the products." AR 1417. The VA also notified Guidon that they intended to solicit the 2023 and 2024 signage requirements as one project "[t]o cover lost time due to this protest and for legal reasons." *Id*. The March 28, 2023 email also noted confusion in pre-bid Requests for Information questions from both a sign manufacturer and a potential bidder regarding the signage requirement. *Id*.

Also on March 28, 2023, the VA requested the GAO to dismiss Blue Yonder's protest because it was taking corrective action that would render it moot. AR 1096. The Contracting Officer ("CO") stated that after bid opening, the VA determined that it required an increase in signage updates. AR 1098. She recommended termination of BWhit's contract and cancelation of the IFB so that the VA could review its requirements and issue a new IFB accurately reflecting the agency's needs. AR 1096–98. The GAO dismissed Blue Yonder's protest on March 29, 2023, without addressing the merits. AR 1099.

The VA met with Guidon one week later to discuss the concerns described in the March 28, 2023 email. AR 1415. During the meeting, Guidon agreed to revise the solicitation documents to remove ambiguities, and to include only "salient features of the products without mentioning any manufacturer." *Id*. Guidon also agreed to produce one bid package for both the 2023 and 2024 signage requirements. *Id*. Two months later, the CO issued a Justification of In-Scope Work form, stating that the VA took action "to correct the inconsistencies in the original bid that caused the bid protest for this contract." AR 1407.

## II. Procedural History

BWhit filed its Complaint in this Court on June 5, 2023. Compl. The Government submitted the Administrative Record on June 21, 2023. Admin. R., ECF No. 12. Plaintiff moved for judgment on the Administrative Record on July 13, 2023. Pl.'s Mot. On August 1, 2023, the Government amended the Administrative Record to include inadvertently omitted documents. Def.'s Mot. to Amend the Admin. R., ECF No. 16; Amended Admin. R., ECF No. 16. The Government then cross-moved for judgment on the Administrative Record on August 10, 2023, and BWhit replied on August 21, 2023. Def.'s Mot.; Pl.'s Reply Supp. Mot. for J. on the Admin. R. ("Pl.'s Reply"), ECF No. 21.

Less than a month later, the Government requested leave to amend the Administrative Record a second time, which BWhit opposed. Def.'s Second Mot. to Amend the Admin. R. ("Def.'s Second Mot. to Amend"), ECF No. 23; Pl.'s Opp. to Def.'s Second Mot. to Amend, ECF No. 24. The Government moved to add Tabs 34 and 35 to the Administrative Record, which were mistakenly omitted from the record submitted on June 21, 2023. Def.'s Second Mot. to Amend at 1. Tab 34 contains emails relating to the VA's acquisition planning. AR 1408–14. Tab 35 consists of emails discussing the VA's decision to take corrective action. AR 1415–17. The Government argued that these materials should be added because they comprise "core documents" that the VA developed and considered in deciding to take corrective action after

Blue Yonder's bid protest.  Def.'s Reply Supp. Second Mot. to Amend ("Def.'s Reply") at 2–3, ECF No. 27.

The Court agreed.  These documents are relevant to the VA's actions and were generated during the VA's decision-making process.  Thus, they are appropriately included in the Administrative Record.  *See CGS-ASP Sec., JV, LLC v. United States*, 162 Fed. Cl. 783, 798 (2022) (noting that the standard for completing the record is less stringent than that for supplementing the record); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019); RCFC Appendix C ¶ 22 (providing a non-exhaustive list of "core documents" relevant to bid protests and that qualify for inclusion in the record).  For example, Tab 34 references the 2023 signage project at issue, as well as the 2024 project.  AR 1408.  This information is relevant as the VA intends to combine both projects in the planned re-solicitation—the very agency action BWhit challenges.  AR 1417.  Likewise, Tab 35 is relevant because it references ambiguity in the solicitation documents as rationale for the corrective action.  *Id.*  Accordingly, on August 29, 2023, the Court granted the Government's Second Request to Amend the Administrative Record.  Order Granting Def.'s Second Mot. to Amend, ECF No. 26; Second Amended Admin. R., ECF No. 29.

The Government replied to Plaintiff's Response to the Cross-Motion on August 31, 2023.  Def.'s Reply Supp. Cross-Motion for J. on the Admin. R., ECF No. 30.  On September 7, 2023, Plaintiff filed a Response to Defendant's Second Additions to the Administrative Record.  Pl.'s Resp. to Def.'s Second Additions to the Admin. R. ("Pl.'s Resp. to Second Amended AR"), ECF No. 31.  On September 21, 2023, the Court heard oral argument on the Motion and Cross-Motion for Judgment on the Administrative Record.  *See* Tr.  Following oral argument, the Court requested supplemental briefing.  Order for Suppl. Briefing, ECF No. 33; Def.'s Suppl. Br., ECF No. 34; Pl.'s Suppl. Br., ECF No. 35.

### III. Jurisdiction

The Court of Federal Claims has jurisdiction over protests by "an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  While a termination for convenience is not the proper focus of a bid protest brought under 28 U.S.C. § 1491(b)(1), a bid protest may address the underlying government procurement action that produced both a contract termination and re-award.  *Davis/HRGM Joint Venture v. United States*, 50 Fed. Cl. 539, 544–45 (2001) (citing *Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 77–80 (D.C. Cir. 1985).

Because BWhit is challenging "the entire scope of [the agency's] decision to take corrective action" in response to a GAO protest, this Court can adjudicate Plaintiff's claims.  *Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 705 (2011), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012) ("The inclusion of contract termination as part of that plan [for corrective action] does not divest the court of its bid protest jurisdiction."); *see also Turner Constr. Co. v. United States*, 645 F.3d 1377, 1387–88 (Fed. Cir. 2011) (characterizing a successful bidder's challenge of the agency's corrective action as a bid protest and not a Contract Disputes Act claim).

4

**IV.     The Motion to Strike Michael Gibbs' Declaration**

As an attachment to its Motion, Plaintiff included a declaration from Michael Gibbs, identified as a "member of the LLC."  Decl. of Michael Gibbs ("Gibbs Decl."), ECF No. 13-1.  The Government moved to strike paragraph six of the Gibbs Declaration, arguing that it contains unauthorized, extra-record evidence that impermissibly addresses the merits of the protest and duplicates record evidence.  Def.'s Mot. at 12.  Because the Court must "make factual findings from the record evidence as if it were conducting a trial on the record," *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005), it considers this Motion at the start to determine the Declaration's admissibility.

The Court may appropriately admit "evidentiary submissions that go to the prospective relief sought in this court."  *See PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 5 (2009); *PGBA, LLC v. United States*, 60 Fed. Cl. 567, 568 n.1 (2004) ("It is the responsibility of this Court . . . to provide for factual proceedings directed toward, and to find facts relevant to, irreparability of harms or prejudice to any party or to the public interest through grant or denial of injunctive relief."), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004).  However, courts will not admit declarations that solely restate part of the record and re-argue the merits.  *PlanetSpace, Inc.*, 90 Fed. Cl. at 6, 8 (striking statements "clearly devoted to attacking the merits" of the agency action and therefore "prototypical of the kind of extra-record evidence against which the court must safeguard") (citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)); *Commc'n Constr. Servs., Inc. v. United States*, 116 Fed. Cl. 233, 258 (2014) (rejecting expert testimony that questioned the reasonableness of the agency decision).

Most of paragraph six of the Gibbs Declaration repeats facts already in the Administrative Record.  *Compare* Gibbs Decl. at 2–3 *with* AR 1011 (notice of award to BWhit), 1268–70 (emails informing BWhit of the termination decision after Blue Yonder's protest), 1272 (email from Mr. Gibbs describing phone call between BWhit colleague and VA representative, who allegedly stated that the termination's purpose was "to obtain a better price"), 76–80 (showing available funding for all eight buildings), 1004–05 (BWhit's base bid), 1098 (Notice of Corrective Action describing changes to quantity requirement).  In the remainder of paragraph six, Mr. Gibbs opines on whether the VA had a "legitimate reason for terminating [BWhit's] contract" and contends that "BWhit is ready, willing and able to provide more signage."  Gibbs Decl. at 2–3.  These statements do not address prospective relief, the risk of irreparable harm to Plaintiff, or the public interest factor.  Rather, they relate to the merits of the protest: whether the VA's corrective action had a rational basis.  Accordingly, the Court grants the Motion to Strike.

**V.      Motions for Judgment on the Administrative Record**

    **A.     Standard of Review**

The Court reviews whether the VA's decision was arbitrary, capricious, an abuse of discretion, or contrary to law.  *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 990 (Fed. Cir. 2018); *Garrett Elecs., Inc. v. United States*, 163 Fed. Cl. 632, 650 (2023).  "[A] reviewing court may set aside a procurement action," such as a corrective action, "if (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir.

2009) (internal quotation marks omitted). "The rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion'" and whether the "proposed corrective action . . . is rationally related to the procurement's defects." *Dell Fed. Sys.*, 906 F.3d at 992–95 (quoting *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).

Bid protests are generally decided on motions for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). *See, e.g.*, *Trace Sys. Inc. v. United States*, 165 Fed. Cl. 44, 56 (2023). When deciding these motions, the Court must "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1354; *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 751 (2012). ("Unlike a motion for summary judgment, a genuine dispute of material fact does not preclude a judgment on the administrative record.").

### B.     Discussion

#### 1.     The VA's Corrective Action Was Supported by a Rational Basis.

The VA's decision to take corrective action was rooted in reasons rationally related to the procurement's defects—that is, curing ambiguities in the original IFB and updating its requirements to include the 2024 signage requirements. *See* AR 1098 ("[T]he Agency determined that its requirements have changed to include an increase in the number of signage updates required. Therefore, my recommendation is cancellation of the IFB so the Agency can review its requirements and issue a new IFB that accurately reflects those requirements."), 1407 (noting a "[c]hange due to FM Request"), 1415 ("Award for the construction project for Part 1 for Wayfinding [sic] project is in the process of being cancelled as it was protested by an unsuccessful bidder citing ambiguity in our documents."). Thus, the decision withstands rational basis review.

#### 2.     The VA Did Not Offer a Post Hoc Rationalization.

Plaintiff claims that the VA's rationale for its corrective action constitutes an impermissible post hoc rationalization. Pl.'s Reply at 5. It also contends that the VA needed no "additional work" that changed the solicitation requirements. *Id.* at 4. According to BWhit, this too is a post hoc rationalization. *Id.* Indeed, "[a]n agency must defend its actions based on the reasons it gave when it acted." *Bae Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 227 (2022) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908–09 (2020)). The VA did so here.

The agency's March 28, 2023 communication with Guidon shows that the VA identified the procurement's ambiguous terms as a reason for taking corrective action. AR 1415, 1417. Similarly, the November 2022 emails relating to the bid preparation further evidence that the VA intended to upgrade additional signage in 2024—the "additional work" that the VA would later combine with the 2023 project after Blue Yonder protested and timing of the work became more urgent. AR 1407, 1408–1414 (November 2022 bid preparation discussions), 1417.

In addition, the Contracting Officers allude to both the procurement ambiguity and the increased signage requirements in their April 2023 emails.[2] AR 1268 (CO Juan Gaytan's email, stating that he told BWhit that in addition to [***]'s inability to provide rail systems, the VA found "other issues" and that "[a] new solicitation will address those issues and will combine two projects to be a bigger project"), 1271 (CO Roniece Ambrose's email to BWhit representative Michael Gibbs, clarifying that the corrective action "was [the agency's] response to the protest" and that "[the VA is] not looking for a better price, [it is] addressing the protest concerns only"). Thus, while the VA's Justification of In-Scope Work came two months after taking corrective action, *see* AR 1407, the entire record contains significant evidence that VA considered procurement ambiguities and increased signage requirements at the time it canceled BWhit's award.

### 3.     The IFB Contained Ambiguous Requirements.

While the VA intended to run a brand name or equal procurement, at least one offeror misinterpreted this requirement in the bid solicitation documents. Indeed, Part 2.1(C) of Section 10 14 00 can be interpreted two ways. Part 2.1(C) instructed bidders to "provide equal to interior and exterior signage products by one of the following manufacturers; [s]ubject to compliance with the project requirements: a. ASI Signage, b. 2/90 Sign Systems, c. A.R.K. Ramos, d. ACE Sign Systems, Inc., e. Diskey Architectural Signage Inc.[,] f. NDS Signage and Branding." AR 490. Although the VA intended for offerors to provide signs "equal to" products from any of the listed manufacturers, and BWhit interpreted the solicitation in this way, this is not the only way to read this provision.

"Solicitation language 'is ambiguous . . . if its language is susceptible to more than one reasonable interpretation.'" *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1309 (Fed. Cir. 2016) (quoting *Banknote Corp. of Am.*, 365 F.3d at 1353). In this case, Blue Yonder reasonably interpreted Part 2.1(C) to *mandate* use of one of the six listed manufacturers, rather than as a brand name or equal to solicitation. Blue Yonder's bid protest was precipitated, at least in part, on its belief that BWhit could not comply with the requirements by using a manufacturer outside the six listed under Part 2.1(C). AR 1088 ("By process of elimination, this demonstrates that BWhit proposed to use a source from outside the approved list, or a signage company [***] that does not produce signs in compliance with the IFB specifications."); *see also* AR 1215–17 (Blue Yonder's email to the VA questioning BWhit's low bid and noting "there were not very many vendors *on the VA provided approved vendor list* who actually submitted a price for this solicitation") (emphasis added).

Aside from Part 2.1(C)'s ambiguous language, the VA's solicitation also violated FAR provisions relating to brand name or equal solicitations. First, the IFB did not specify

---

[2]     The record shows that Juan Gaytan was the Contract Specialist or Contracting Officer who served as the main point of contact for this solicitation. *See* AR 81, 1014, 1268–69 (Gaytan's title of Contracting Officer listed in email signature). Roniece Ambrose served as the Supervisory Contract Specialist and Branch Chief overseeing this project and ultimately approved the corrective action. *See* AR 1096–98 (Notice of Corrective Action), 1271 (Ambrose's title listed in email signature).

7

"salient . . . characteristics" that would allow the CO to evaluate whether a non-listed manufacturer provided products "equal to" the enumerated brands. *See* FAR 52.211-6(a) (requiring "brand name or equal" procurements to specify "salient physical, function, or performance characteristics that 'equal' products must meet"). Second, the IFB did not reference FAR 52.211-6, which governs brand name or equal solicitations. *See* FAR 11.107. These omissions could have led bidders to reasonably interpret Part 2.1(C) to mandate use of one of the listed manufacturers because, as written, the solicitation does not comply with FAR 52.211-6. As a result, the Court finds Part 2.1(C) ambiguous as a matter of law. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996) ("Whether a contract provision is ambiguous also is a question of law.") (citations omitted); *Per Aarsleff A/S*, 829 F.3d at 1309 (Fed. Cir. 2016).

The Government first raised the VA's failure to comply with FAR 52.211-6 and FAR 11.107 during oral argument. Tr. 16:2–21. Plaintiff claims that the Government's argument "that its omission of a standard FAR contract clause . . . somehow necessitates cancelation, termination and re-solicitation" is thus waived. Pl.'s Suppl. Br. at 1, 3. Generally, a party waives issues not raised in its opening brief. *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010); *In re Motupalli*, 791 F. App'x 895, 897 (Fed. Cir. 2019). Here, however, the Government's opening brief argued that "the IFB contained inconsistencies such that it could be interpreted to require offerors to use one of six identified manufacturers or use any manufacturer as long as it was 'equal to' to the listed ones." Def.'s Mot. at 18. It also noted that "offerors must be given sufficient detail . . . to allow them to compete intelligently and on a relatively equal basis"—detail that was not afforded to the offerors here. *Id.* at 19.

While BWhit is correct that the Government did not previously cite these FAR provisions, the Government has consistently argued that the solicitation's ambiguity prompted the corrective action. The Government's references to the VA's non-compliance with FAR 52.211-6 and FAR 11.107, as supported by the record, simply supplement this argument, and rebut Plaintiff's claim that the solicitation contains no ambiguity or inconsistencies. *See* Def.'s Suppl. Br. at 3 ("The IFB contains no reference to this required FAR provision [even though] BWhit contends that the IFB was obviously a brand-name-or-equal solicitation."); Tr. 19:7–10 ("I don't believe that, as a matter of law, that solicitation was ambiguous.").

Had other potential offerors interpreted Part 2.1(C) as Blue Yonder did, competition for this procurement would have been unnecessarily limited. In fact, the VA later discovered that several of the listed manufacturers may not have been able to comply with the specifications, further exacerbating the defect. AR 837 (statement from Diskey Architectural Signage, Inc. asserting that it "[does] not produc[e] modular frame systems," a requirement of the project specifications); 1416 (stating that A.R.K. Ramos, NDS Signage and Branding, and ACE Sign Systems may be unable to provide signage for this project) ("[***] [said] that they are not producing the rail system. So, either we need to remove that requirement or remove [***] from the list of manufacturers.").

Thus, Part 2.1(C)'s ambiguity, which led to Blue Yonder's misunderstanding and subsequent protest, warranted corrective action by the VA. *See Dell Fed. Sys.*, 906 F.3d at 995 (finding that a spreadsheet defect was "highly material" because it affected offeror's

understanding of what equipment it may or may not propose); *Cahaba Safeguard Adm'rs, LLC v. United States*, 165 Fed. Cl. 318, 329 (2023) (finding that agency's corrective action was rationally related to defects that included unclear solicitation instructions). Further, the VA's plan to revise and clarify its requirements before re-soliciting bids is rationally related to the procurement's defect. Revising the solicitation documents to include "only salient features" without the ambiguous manufacturer requirement could increase competition by allowing offerors to use vendors outside of a designated list. AR 1415; *Dell Fed. Sys.*, 906 F.3d at 997 (approving of agency's corrective action that "would, upon rebidding, level the playing field for those successful offerors who did not propose the lowest price and now deserve a chance to revise their proposals to fairly compete during the rebidding process").

### 4. The VA Planned to Combine the 2023 and 2024 Signage Projects.

Beyond curing ambiguities in the bid solicitation documents, the record shows that the VA decided to cancel the IFB and re-solicit under the clarified requirements because Blue Yonder's protest delayed work and threatened the VA's funding for the signage project.[3] AR 1416 ("Due to this protest, VA lost [a] lot of time and [is on] the verge of losing funds for the project for this fiscal year."). To reclaim lost time, the VA decided to combine the project for fiscal year 2023 with the 2024 project. AR 1417 ("Guidon shall combine contract documents for both parts of the project to enable VA to solicit it as one project. . . . Guidon shall prepare a combined [independent government estimate] while revisiting the cost estimates.").

As the CO stated in the Notice of Corrective Action, the VA's requirements changed "to include an increase in the number of signage updates" beyond those initially stated in the bid solicitation. AR 1098. Given the changed circumstances caused by Blue Yonder's bid protest, the VA acted reasonably to preserve its funding and move the 2023 project forward. *See Yang Enters., Inc. v. United States*, 156 Fed. Cl. 435, 451–52 (2021) (finding that the Space Force reasonably separated requirements into two contracts because the agency's radar and telemetry needs had changed since the solicitation's issuance); *see also Garrett Elecs., Inc.*, 163 Fed. Cl. at 656 ("[A]n agency may have a rational basis to implement corrective action that is broader than simply addressing the discrete procurement defect.").

While Plaintiff takes issue with the brevity of the explanation provided in the Notice of Corrective Action, the Court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974); *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998) (holding that "[a]n explicit explanation" of an agency's decision "is not

---

[3] BWhit makes much ado about the VA canceling the IFB "due solely to increased requirements." FAR 14.404-1(a)(3); Pl.'s Reply at 22–23. Plaintiff also claims that the VA should have modified the contract or solicited the increased quantities as a new acquisition. Pl.'s Reply at 7–8. Aside from the inapplicability of FAR 14.404-1 here, BWhit's argument is unpersuasive because increased signage requirements were not the sole reason for cancelation. *See Westernworld Servs., Inc. v. United States*, No. 91-2152-LFO, 1992 WL 52531, *5 (D.D.C. Feb. 28, 1992) ("Although solicitations should not typically be cancelled due to increased requirements, the facts here indicate that the expanded requirements were not the 'sole[]' reason for the resolicitation[.]") (analyzing FAR 14.404-1(a)(3)).

necessary . . . where the agency's decisional path is reasonably discernible"). Although "there is no universal test for what constitutes an agency's failure to provide a sufficient justification for its actions," a review of prior cases involving challenged corrective actions is instructive. *Yang Enters., Inc.*, 156 Fed. Cl. at 449 (finding the Space Force's changed requirements as a "compelling reason for cancellation" even though the CO did not explain what "recent system failures" led the agency to determine a greater need for radar and telemetry); *PAE Applied Techs., LLC v. United States*, 154 Fed. Cl. 490, 516–17 (2021) (finding that the agency had a rational basis for its limited corrective action despite the protestors challenges to the "supposed lack of information . . . provided" because the agency gave consistent statements that the corrective action was aimed to revise cost proposals only).

In addition, the Court's review of the agency's reasons for taking corrective action are not limited to the VA's Notice of Corrective Action. AR 1096–98. Rather, "the court's review must be based on the entire administrative record before the court." *Garrett Elecs., Inc.*, 163 Fed. Cl. at 658 (quoting *Novak Birch, Inc. v. United States*, 132 Fed. Cl. 578, 602 (2017)); *see Raytheon Co. v. United States*, 121 Fed. Cl. 135, 152, *aff'd*, 809 F.3d 590 (Fed. Cir. 2015) (stating that the court "would revise the scope of its review" if the agency successfully argues that a memorandum providing independent rationale for taking corrective action should be included in the AR). The Administrative Record provides sufficient information to discern the agency's decisional path.

Shortly after Blue Yonder's protest notified the VA of errors in the solicitation documents, the VA contacted Guidon to discuss ways to remedy both the ambiguities and the project delays. AR. 1415–17 (email dated March 28, 2023, to Guidon noting the ambiguities and lack of salient features detailed in the solicitation and requesting modification to solicit as one project "[t]o cover the lost time"). Representatives from the VA and Guidon later met on April 4, 2023, as was documented by the VA project planner. *See* AR 1415 (email describing the meeting). The CO cited the same increased quantity requirements, bid document ambiguities, and Blue Yonder's protest in the Notice of Corrective Action and Justification of In-Scope Work. AR 1098, 1407. This record provides additional evidence of the VA's decisional path. *See Wheatland Tube*, 161 F.3d at 1369–70.

Although BWhit contends that the VA had better options available, such as contract modification or a new acquisition, the agency chose a rational option. Pl.'s Resp. to Second Amended AR at 4–5. This Court will not "substitute its judgment for that of the agency." *Dell Fed. Sys.*, 906 F.3d at 998–99 (citing *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003)). Therefore, against the backdrop of a delayed contract award date and the concurrent procurement defect discovery, the VA acted reasonably in terminating BWhit's contract, canceling the IFB, and deciding to re-solicit under new, clarified requirements.

### 5. The VA Did Not Breach Its Duty of Good Faith and Fair Dealing.

Plaintiff seems to suggest, without citation to the record, that the VA acted in bad faith by "styl[ing its contract termination and IFB cancellation] as 'corrective action' to extricate itself from a GAO protest" or to "obtain a better price." Pl.'s Mot. at 4, 23; *see also* AR 1272. It argues that the contract termination and IFB cancelation violate the implied covenant of good faith and fair dealing. Pl.'s Reply at 16.

10

The Court presumes "that government contract officials exercise their duties in good faith." *Am-Pro Prot. Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002); *see also Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986). To negate this presumption, plaintiffs must show clear and convincing evidence that the agency acted in bad faith or "had a specific intent to injure [the plaintiff]." *JKB Sols. & Servs., LLC v. United States*, 18 F.4th 704, 709 (Fed. Cir. 2021); *Croman Corp. v. United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013) ("[T]o induce a court to abandon the presumption of good faith dealing[] requires 'well-nigh irrefragable proof.' Thus, the [plaintiff] must offer clear and convincing evidence that the [agency] did not act in good faith in order to prevail on this issue."). BWhit has not met its burden of proof. Indeed, BWhit's guesses about the VA's allegedly improper motives for taking corrective action find no support in the record, let alone provide clear and convincing evidence that the VA took corrective action in bad faith. *Croman Corp.*, 724 F.3d at 1364.

### 6. FAR 14.404-1 Does Not Apply, and the VA Did Not Violate Applicable Procurement Regulations.

BWhit contends that FAR 14.404-1 governs this bid protest. It does not. Both a plain reading of the statute and precedent do not support Plaintiff's position. Rational basis review, rather than FAR 14.404-1's heightened "compelling reason" requirement, applies to the VA's IFB cancelation because it occurred post-award. *See Dell Fed. Sys.*, 906 F.3d at 991 ("[C]orrective action only requires a rational basis for its implementation."). After bid opening but before contract award, FAR 14.404-1(a)(1) allows an agency to reject all bids and cancel the IFB if there is a "compelling reason" to do so. FAR 14.404-1(a)(1). However, this regulation only applies to IFB cancelation *before* contract award. Here, the agency took corrective action after it awarded BWhit the contract. Thus, this regulation is inapplicable.

Plaintiff fails to cite precedent where courts extended FAR 14.404-1's reach to post-award disputes. In fact, the Court of Federal Claims has explicitly refused to apply this regulation to a post-award bid protest. *See, e.g.*, *Coastal Env't Grp., Inc. v. United States*, 118 Fed. Cl. 1, 11 (2014) ("The [agency's] purported decision to cancel the procurement does not fit within the four corners of FAR 14.404-1 because [it] made the decision *after* contract award, did not expressly reject all of the bids, and did not determine, in writing, that there was a compelling reason to reject all of the bids and cancel the IFB.") (emphasis added); *Griffy's Landscape Maint., LLC v. United States*, 51 Fed. Cl. 667, 675 (2001) (finding that in a post-award bid protest involving RFP cancelation, FAR 14.404-1(a)(1) does not apply because the agency did not cancel and re-solicit an IFB "in the midst of negotiations and prior to award"). The Court similarly declines to apply FAR 14.404-1 to this post-award IFB cancelation.

Moreover, even if FAR 14.404-1 applied, correcting ambiguities in the procurement and revising requirements in response to changed circumstances are compelling reasons for cancelation. *See supra* Section IV(B); *see, e.g.*, *Vanguard Sec., Inc. v. United States*, 20 Cl. Ct. 90, 97, 112 (1990) ("[FAR 14.404-1] authorizes an agency head . . . to cancel a solicitation after bid opening for a compelling reason, such as inadequate or ambiguous specifications."); *Yang Enters., Inc.*, 156 Fed. Cl. at 451–52 (Space Force's changed needs were a "compelling reason for cancellation"); *Aviation Enters., Inc. v. United States*, 8 Cl. Ct. 1, 63 (1985) ("This court has recognized that defective specifications may be a compelling reason within the discretion of the

11

contracting officer to reject all bids.") (citing *Caddell Constr. Co. v. United States*, 7 Cl. Ct. 236, 241 (1985)).

Plaintiff asserts that "there are *no circumstances* that generally qualify as a compelling reason to cancel an IFB *after award*, which is the case here." Pl.'s Suppl. Br. at 4 (emphasis in original); Tr. 46:7–9 ("Because the fact that the FAR enumerates ten reasons that are good enough before award indicates that no reasons are good enough after award."). To support this contention, BWhit cites a single case from the Fourth Circuit. Pl.'s Suppl. Br. at 4 (citing *Delta Chem. Corp. v. West*, 33 F.3d 380, 382 n.2 (4th Cir. 1994)). This case is of limited import here, particularly since this court has already considered the applicability of FAR 14.404-1 to post-award IFB cancelations. Moreover, BWhit mischaracterizes the Fourth Circuit's reasoning. In *Delta Chemical Corporation*, the Circuit applied FAR 14.404-1's "compelling reason" language to a post-award case, even though it recognized that this provision generally applies to cancelations "before award but after opening." *Delta Chem. Corp.*, 33 F.3d at 382 n.2. In doing so, the Circuit is clear that an agency may appropriately cancel an IFB post-award if a compelling reason exists. *See id.* at 382. Even if this case applies here, the Court can—and does—find that the ambiguous solicitation terms and increased quantity requirements collectively provide a compelling reason.

BWhit also claims that the VA violated FAR 14.404-1's procedural requirements because the IFB cancelation was not made upon written determination by the agency head. Pl.'s Mot. at 23. Plaintiff is mistaken. The Federal Circuit has considered this question and consistently held that a CO may do so. *See Nat'l Forge Co. v. United States*, 779 F.2d 665, 668 (Fed. Cir. 1985) (holding that it was not an abuse of discretion for a contracting officer to cancel a solicitation under FAR 14.404–1(c)(1)); *Caddell Constr.*, 7 Cl. Ct. at 241 ("The authority vested in the contracting officer to decide whether to cancel an IFB and readvertise is extremely broad."). Additionally, the Federal Circuit has upheld a VA contracting officer's decision to cancel a solicitation under FAR 14.404-1(a) and (c). *See Veterans Contracting Grp., Inc. v. United States*, 920 F.3d 801, 806 (Fed. Cir. 2019).

Finally, Plaintiff's assertions that the VA violated 41 U.S.C. § 3701 because the agency head did not determine that rejection of all sealed bids was "in the public interest" also fail. Pl.'s Mot. at 20. Here, the VA already awarded the contract to BWhit and rejected all other offerors. AR 1007–18. There are no surviving bids for the VA to reject. Neither FAR 14.404-1 nor 41 U.S.C. § 3701 heighten the standard the VA must meet. The operative questions are whether the VA's corrective action had a rational basis and whether the VA adhered to applicable procurement regulations. The answer to both is yes.

### VI.     BWhit Is Not Entitled to Injunctive Relief.

The Court considers the following four factors when deciding whether a plaintiff is entitled to permanent injunctive relief:

(1) whether, as it must, the plaintiff has succeeded on the merits of the case;

(2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief;

(3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and

(4) whether it is in the public interest to grant injunctive relief.

*PGBA*, 389 F.3d at 1228–29 (citation omitted).  BWhit fails to satisfy the first factor, and "[b]ecause proving success on the merits is a necessary element for a permanent injunction," the Court denies BWhit's request for relief.  *Dell Fed. Sys.*, 906 F.3d at 999; *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1384 n.7 (Fed. Cir. 2022) ("Because we conclude that [plaintiff] has not shown success on the merits, we need not address its claim of irreparable injury.").

### VII. Conclusion

For these reasons, Defendant's Motion to Strike is **GRANTED**.  Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**.  Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED**.  The Court directs the Clerk of the Court to enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge